May it please the court, my name is Sean Sedegat. I represent the petitioners in this case. I'd like to reserve two minutes for rebuttal. This case is about a claim for asylum which was initially filed in Los Angeles by three citizens of Italy, one of them a national of Iran, which was subsequently denied by the immigration judge and the appeal was denied by the Board of Immigration Appeals. The board denied the case on three specific grounds and failed or chose not to address a ground that was pivotal in the case as well. Addressing the three points one by one, number one was that the threats did not rise to the level indicated in LIM and as such the individuals could not be afforded the presumption of well-founded fear of persecution. Number two, the objective prong of the well-founded fear was not met and number three, they could have relocated to another part of Italy in any event. The court chose to completely ignore, and it's in the second paragraph of the second page of the decision, the issue of particular social group, although in doing that they could have addressed it not for its own sake where it goes to the nexus but also where it goes to the objective prong of well-founded fear of future persecution where pattern and practice of persecution of certain individuals based on the five enumerated grounds would have been crucial. And I believe that in not addressing that issue, the decision that they have made is incomplete and incorrect. But going to the three issues that they did address, number one was whether the threats rose to the level indicated in LIM and cases since LIM as to cause significant actual suffering and harm. Courts since LIM have incrementally enlightened us as to what the word menacing, the word significant, and suffering and harm mean because they're fluid concepts. In LIM, Kamala Parsad and, Your Honor, Judge Berzon have to help me with this. Is it Hoxha or Hoxha? I know the case, but I would assume Hoxha, but I don't know. That case, Nahravani and Ramadan, they were denied for various reasons. In LIM it was denied because he remained in his native country for a period of time. In Hoxha, because the attackers did not know him, they showed no continuing interest in him after they assaulted him. Mr. Sadagat, it's true, though, that in this case there were contingencies. And everything was contingent upon Ms. Murian's husband cooperating with the authorities, and there was never any evidence or record one way or the other whether he was cooperating with the authorities. And that was the triggering event. Am I correct? I don't believe so, Your Honor, with all due respect. Correct me then. Sure. We had prior to MEVG, we had characterized the social group as immediate family members of those mafia members who have become or can possibly become police informants. The mafia, as we know them, has every interest to silence somebody who's even contemplating being an informant. I believe now... We don't have any evidence that her husband was contemplating being an informant. The only evidence we have of record is that her husband was arrested. Is that right? We have her testimony, and in her testimony she says the lawyer had told the husband, you better give up. And the husband talked to her and said, they have talked to me, I need to cooperate with them, you better leave the country. And in this circuit, in the Ninth Circuit, based on... Do we know if he ever cooperated, though? We don't, but I don't think we need to. But isn't part of the problem that she doesn't know either and she has no control over him? So in other words, she doesn't know either, and if at any point he cooperates, she has no control over that. Absolutely. And I believe based on her testimony in the second hearing before the immigration judge, she has no communication with him. He may have actually cooperated and disappeared into the witness protection plan. We don't know where he is. All we have is what we have. We have to play the cards that we are adults, and we know that during the hearing she testified that he had said, I'm going to cooperate, you better leave the country, and that's what she did. He actually said that he was going to cooperate? Yes. Or did he say that they were pressuring him to cooperate? Which was it? No, that he is going to cooperate. Okay. He actually, I'm paraphrasing a little bit. I think he said things are getting tough and I'm going to cooperate. Something to that effect. Going back to Lim, Your Honors, in Hoha I mentioned because they did not know him, the beating, the beaters, the assaulters did not show any interest in the future, and he remained in the country for six months. In Nahravani there was no personal confrontation. And in Ramadan she herself admitted that the threats were mere harassment. This case is more like Ruano, Marcos Gonzalez, where there was numerosity in the number of threats, there was physical proximity, there was a confrontation, and the perpetrators knew them, and also the person was being pursued, and there was a similarity. Other people had suffered harm by the same perpetrators. This is the case for us. Everybody knows that the mafia silences people that are against it, that are informants. So Ms. Mudayan had every right to think that when they come and say your child looks beautiful or your daughter is beginning to look like the husband, by the way, we know your home address, that they mean business. They didn't have to pull a gun, they didn't have to say we are going to kill you. But what impact on your argument is the fact that they are now divorced? She did not, this question was specifically put to her during the second hearing. She returned to Italy to sign the papers. There is a three-year waiting period apparently based on Italian law before you can seek a divorce, and what's in the record doesn't indicate she was divorced. What's in the record just indicates that he signed the divorce papers on July 15, 2005. But whether or not she was divorced, now does she have an interest, there are still the children. Yes. Does she have, I presume she would have a continuing interest in the safety of her children. Absolutely, Your Honor, and also we've all heard of sham divorces. I have no idea, maybe the divorce in the first place was propagated for her safety. Whether that works or not, I don't know, but I don't think the mafia lacks being cynical enough not to believe that. Counsel, let's say we agree with you on that she established past persecution. The part of the case I'm having the most trouble with from your perspective is that there's nowhere in Italy that she can be resettled. If we agree with you on past persecution, how does that affect our analysis on resettlement in Italy? Do we need to resend it back to the board? Does the standard of review change or does the burden change before the board? The burden absolutely changes because a presumption of well-founded fear arises upon a showing of past persecution. That's Mel Cornian versus Ashcroft. Also, isn't the relocation standard somewhat different at that point, too? That's my question. Yes, it is different, Your Honor. It has to be demonstrated by the preponderance of evidence once that showing is made that she can relocate someplace else. And, Your Honors, at page 494 of the record of proceedings, the prime minister of Italy at the time says that this is a situation that will never go away and mafia bosses are still prepared to silence those who oppose them. He's talking about political figures. What about people like the petitioner here? Let me ask you something else, though. As you noted, the board a second time around sort of punted on the particular social group. So if we were to remand, that would still be on the table. Is that right? I believe so, Your Honor. I believe that the correct characterization of this social group since MEVG, and the court indulges me because since this has been fluid, I believe the petitioner should be given the chance to recharacterize what they meant. A social group comprised of family members of organized crime gang members who suffered persecution on account of their family ties, where the gang member was arrested and stood in a position to or contemplated becoming an informant. And where the contemplation was known by the previous cohort or the public. I'm sort of wondering why you make it all so complicated. My understanding is that at this point, a family is a social group in general. I mean, why can't it just be that she's a member of his family? It could be, Your Honor. I'm just Your Honor is right. All right. If you want to reserve time. Yes, Your Honor. Thank you. Good morning again, Your Honor. Eric Anderson again, representing the Attorney General. A reasonable fact finder could conclude that the four threatening encounters on the street in Italy did not rise to the severity required for past persecution. Let me go back a minute. The original IJ opinion essentially said these weren't really threats. We're off that. I take it. Yes, Your Honor. What we have now is the agency looked at both her written statement, which is much more clear, detailed and her testimony, which is not as clear. But the agency considered both and considered that these threats, which were yes, they were in person, but they were a total of four times versus the dozens of times that this court has recognized to constitute past persecution. They did not involve the imminent risk of harm. It was it was conditioned, as Judge Marbley had said. And they did not cause the actual suffering or harm that she says it did. They disbelieve her. You said I was, you know, I was frightened. I was scared. I was miserable. I was beside myself. Absolutely. She was frightened and scared for about 15 to 20 minutes, she said. But this did not rise to this. Once she established that she was frightened by these four incidents, doesn't the burden shift to you to show that there's been a fundamental change in circumstances? I agree with the point that was raised before. If the court finds that these four incidents compel a finding of past persecution, then the burden does shift and the board should be permitted to address how the burden plays out at that time. So is your argument that there weren't enough of the threats or they were or because they were contingent or because they weren't explicit enough? All of them together, looking at all of the circumstances. In fact, we know that one of them, the first one occurred in 1997. The second three occurred in 2005. The first one in 1997, we know, scared her. But then over time, her she wasn't scared. In fact, on her first visit to the United States in 2004. Talk about the three that were close in time, because you can't consider them in a vacuum. The first one is not divorced from the second one because the first one involved the child. And three of the four involved the child. I agree that they were all considered together. Yes, Your Honor. I just meant that in 2004, she came to the United States and instead of seeking asylum at that time, she went back to Italy. It was after the three in 2005 that she came to the United States and sought asylum on her second visit here. But as to the facts that indicate these were not themselves past persecution, I'd rely on the standard of review and the fact that a reasonable person could conclude that these instances did not cause harm sufficient to be past persecution. So if the agency got that right and if the burden is on her... Remind me, what was the standard by which that was judged? By what is persecution? Well, by which the three incidents were judged. You said you rest your argument on the standard. I'm sorry, the standard of review, Your Honor, which is that this Court is looking at whether a reasonable person could make that finding. That's all I meant to refer, Your Honor. So if the burden is on Ms. Bedoyan, I believe a reasonable fact finder could also conclude that the circumstances do not create a well-founded fear of persecution. Let me ask you this, counsel. Let's say... I'm going to ask you the same question I asked your opposing counsel. If we think, in fact, that she did show past persecution, but personally, let's say I'm having trouble with the idea that she could not be resettled anywhere in Italy, which I think is the question here, what do we do? Do we need to send that back to the Board to revisit the issue? Yes, Your Honor, because the burden would change at that point. The Board, on the question you were just discussing, in its last opinion, says very little. It says, it cites Lim, and it says the applicant has not shown that any threats, verbal or implied, were menacing enough to establish past persecution, even when all the threats are considered cumulative. Period. The end. Nothing else. And it cites to some places in the IJ opinion. So, I mean, what is there in the IJ opinion that supports that? Well, Your Honor, the IJ discussed more of the testimony and the declaration, which, as I noted, is the most detailed source we have for this. The Board did not recite all of that. I think it was incorporating... I'm just having trouble even finding it in the IJ opinion, in the second IJ opinion. I asked to pass persecution. The IJ decision on page 471 in the AR says, in the present case, no presumption of future persecution applies because the respondents did not suffer past persecution individually. Right. So there was no... I mean, it didn't say anything. And the Board cites to nothing. In other words, there was the discussion that we're having now about whether these, the particulars of the actual threats and the fact that children were involved and the fact that they were face-to-face and the fact that they were killed, that they were repeated in a short period of time. None of that is in either the IJ or the Board opinion. Is that right? Your Honor, on page 2, they cite the IJ's decision at page 2. At page 2 is the facts presented. Right. But there's just no analysis. It says the facts are not in dispute and the Court hereby incorporates by reference the summary of the relevant testimony given that the hearing was on. Right. And then the IJ just says with no discussion there was no past persecution. And the Board says with no discussion we agree with the IJ and cites something that doesn't have any analysis either. At least that's the best I can find. Your Honor, I would, you know, they also cite, the Board also cites, well, the sentence that preceding the citation is, the applicant has not shown that any threats, dot, dot, dot, ellipses to the end. Yeah, I know what you're saying. It cites the IJ and it cites the transcript. I mean, it seems to me that this is at least, at a minimum, a marginal situation as to which some reason needs to be, I mean, I guess I will say that the fact that this was the Mafia and the fact that they seem to, you know, in many situations carry out their threats and the fact that they make threats in a certain fashion, they're smart enough to be somewhat circumspect, but people know what they mean, and the fact that they did this in a confrontational and disturbing fashion, she says she was upset, people would be upset, and there's just nothing here that deals with it. Your Honor, I would say a marginal situation is one in which a reasonable person could find that it was not acceptable. If they did, that's what I'm saying, if they did. But it's just kind of sloughed off. Well, they cite the transcript pages. And I'm not sure that's true, but if it is true, at least you think somebody might tell you why. Well, I mean, why is because they compared it to situations like Lim, that Lim says that threats in a general situation don't constitute past persecution. If in order for them to count, they have to be particularly severe, they have to be particularly harm-inducing, they have to be particularly prolonged over a lengthy period of time with imminent risk of danger in person involving. You know, I think threatening one's children is somewhat inherently. It was ominous, and evidence to be considered, and she established a well-founded fear, but they were not. They didn't shift the burden. I want to go back to Judge Berzon's question, and that begs Judge Berzon's question. Where is it evident that those facts were considered? Your Honor, the presumption is that they're considered, and Ms. Medoyan would have to show that the agency did not consider them. I mean, the agency has given this case several reviews. The first opinion said, you know, in a way that is not terribly convincing, that these weren't really threats. And, you know, so then somebody in your office, when the case came up here the first time, seemed to have been sufficiently bothered by that that you asked for a remand. Then we started over again. And so the whole first episode was based on, it seems to me, a completely implausible reading of the record, and now we're back to a second round. So the question is, did they, what evidence do we have that they actually did consider these as threats, take them seriously, and deal with the details of them? A ten-page IJ decision and a three-page board decision, Your Honor. None of which discuss this. They go pie it like this, and then they get to, well, further persecution and relocation and all sorts of other things. It seems like the board's decision creates a presumption against whether threat, there is a presumption that threats aren't past persecution, because threats ordinarily aren't, Your Honor. This court has established that. The board didn't create that presumption. No, no. But the board at least has to consider the facts of whether there's a past persecution before they reach the conclusion that there was not. What I'm saying is that it's almost as if there is a presumption that she didn't even testify. If I didn't know better, I wouldn't believe that she had even given testimony to that effect, because there's no analysis of that. I'm not sure I have an answer to that, Your Honor. All right. Okay. Thank you very much for your time and your hearing. It was helpful. And you have a little time left. Your Honor, you had asked as to what standard. The standard is limb, which causes significant actual suffering. I'm sorry, threats or words menacing enough to cause significant actual suffering and harm, and I believe they should include any fear that a reasonable person similarly situated without individual proclivities or hypersensitivities or psychosis would fear. In this case, it is. As Judge Berzon said, the mafia has done it and they have their way of doing it. And the Board has not actually analyzed it. They refer to pages from the transcript, which is basically the three incidents that she described and the one incident in 1997. There is no analysis of it. As far as the Board's decision is concerned, they also do the same thing with the issue of future persecution. They refer to things that have nothing to do with that part of the analysis. Judge Berzon, this is the second time I've appeared before you, and something that you have said has rendered me speechless. One time I appeared before you as to what one year is in an asylum setting, and after preparing for a week, you said asylum includes the day after your arrival, and I had to go sit down. This was the second time. Thank you, Your Honors. Thank you very much. That was a very fun opinion. How much is a year?
judges: Berzon, Owens, Marbley